Yes, your honors. Good morning. Dennis Wagner appearing on behalf of the appellate. It pleased the court. It seems that we we start right out of the shoot, which is whether or not we actually have a case to go forward under Bevin's. And the issue being the Egbert decision. I'm well aware that at least a couple of the panel members are certainly familiar with the Egbert case. So the issue is, what did the Supreme Court do with Egbert and how does it apply here? And my reading of Egbert is simply that it forecloses the case against Miller. There is no Bevin's claim. The reason being that essentially Egbert, you're talking about a line officer, a border patrol agent, who supposedly is a U.S. citizen, later apparently sicks the IRS on this guy, and the case comes forward as a First Amendment, Fourth Amendment violation case. So the U.S. Supreme Court, it seems to me, has said that in a typical line agent type of case such as this, we're not going to recognize an excessive force case. That's the only claim that exists in this case involving line officer, Officer Miller, who is with the Bureau of Land Management. The two considerations that were instructed to utilize in determining whether or not a Bevin's case exists is, one, since we're supposed to not necessarily keep running and bringing Bevin's cases, is one, is there a new context? And two, are there some type of special factors that would warrant a better consideration that the Congress take charge in determining whether there's a remedy versus the courts? And if you look at this case, comparing it to Bevin's, there's all sorts of issues that show it's in a different context. We're talking about an apprehension on public property versus Bevin's executing a warrantless search into a home. Bevin's ultimately, he's contending there's no probable cause for the arrest. Here we have the event taking place on public lands. The call comes out as a felony level situation. The privacy interests that someone may have in their home are different in a public setting. There's no issue in this case as to whether the detention was proper. That issue was waived at the court below. The only issue is the excessive force. In addition to BLM being a different agency, there's all sorts of differences which would seem to show that this is a new context under Egbert. And so then the special factors somehow, and I think in our supplemental brief we lied or we laid out some of those factors which include the Inspector General authority to investigate within the department, given that the remedy doesn't have to necessarily be a full and complete remedy, just that there is an intent to remedy in allowing the Inspector General to investigate. You've got a CFR which seems to indicate that employees are bound to follow the laws of the United States. You have the ability to actually file a complaint with BLM online, and I think the link was in our brief. So it seems to me that when you put this together, we have the new context, and then the issue is who's better equipped to provide the remedy, Congress or the courts? And it seems to me that Egbert has now said that for a line officer such as someone like Miller in this case, as Egbert, you no longer have that particular claim to go against Officer Miller. Unless the court has any additional questions on Egbert, I'll just move into the original briefing of the case, which dealt with the issue of qualified immunity. All right, on the issue of qualified immunity, two prongs. Is the force reasonable? Is the law clearly established? And in terms of what the trial court did, it seems to me the trial court creates the issue of fact improperly by considering the declaration of the plaintiff, which is where she indicates she does not see the officer, does not see a gun, does not know where the person is positioned. In her declaration, she, of course, fills in all of this information, and that's the information that the trial court uses to create the issue of fact. We believe that the facts are not in dispute. There is no material fact in the events that had unfolded regarding the call out of a felony endangerment that they meet up Brown and Miller. We have a ranger, Ranger Brown and Officer Miller, who meet up at Purdue Canyon. It's now nighttime. They enter the canyon. Uh, at some point in time, they encounter an ATV vehicle who flees. They can't give chase because of the surrounding conditions. Terrain. Uh, as a result, they proceed slowly, eventually stop trying to create a pinch point. The pinch point being where anyone attempting to leave the area has to funnel through one of three directions of travel within the canyon areas that aren't completely washed out and uninhabitable. They're essentially ready to leave once they determine that they can't get air support in, and it's about 11 o'clock at night. They see the ATV lights and hear the ATV. They are on foot at the time they get back in their vehicles. They repositioned the vehicles to pinch point down to one opening to try and contain the vehicle. The vehicle comes, approaches from a distance and stops. And as the vehicle has illuminating its lights, Officer Miller, who's in his truck, is completely lit up. He assumes they see not only the emergency lights, but see him in the vehicle. He then repositions, repositions his vehicle, gets out, and before he leaves his vehicle, tells the ranger, Let's take them into custody. So as he's exiting his vehicle, pulls out his gun, pointed to the ground. He's assuming the other ranger is behind him, and the ATV has not turned off its vehicle. It's still running, operating, and goes from a stop position, revs up and starts moving towards him. At this point, Miller realizes he's in the middle of the only pathway, and to his right there's a giant boulder, and to the left there's shrubs. He's got nowhere to go. Hearing for his life and that of his partner, he then shoots. We have the force used. Eventually the ATV stops, medical aid is provided, and the incident is investigated. We believe the force was reasonable, but then the second prong is, is the law clearly established to give rise so an officer would know whether or not his conduct was unlawful or not? And the court, the trial court, utilized the Acosta case, the 1996 case. And the differences between those cases are dramatic. Not only dramatic, it's the way the Acosta decision comes out after a verdict, and essentially the North Circuit attempting to recreate how the jury must have interpreted the evidence in the manner that it did to come up with a finding of excessive force. I mean, Acosta is a uniformed officer, San Francisco area, on the street, presumably street lights. Here's a screen, sees two men running with what he believes to be a purse. He gives chase. The two men jump in the car. He ends up firing his weapon. It's not clear in the Acosta case whether or not the vehicle was moving or whether it was slowly moving. There was different testimony, but that case has since been repeatedly cited for the reason. Those facts in the Acosta case are anything but that, it seems to me, and certainly to apply to the circumstances confronted Miller that evening in the canyon in Purdue Canyon. It seems to me that the factual situation between Acosta and the give a reasonable basis of guidance to someone such as Miller in the job that he did. Unless there's questions, I'll just reserve the remaining time. Thank you. Good morning, and may it please the panel. I'm Barry Walker, and I represent the appellees, Denise Mejia. With regard to the Egbert case and council's position that the Egbert case forecloses this case entirely, we disagree. In our supplemental brief, we made the main point, which was that although there are two questions, they could be asked in either order. The first question is whether or not, the first question, whether or not there's a new context of the Bivens claims was not addressed by the court. And so our belief with regard to the impact of the Egbert case on our case is that it doesn't do that. It doesn't. The court doesn't overturn Bivens. The court specifically says that it does not dispense with Bivens altogether, but that instead to decide the case before us, we need not consider Bivens itself. Bivens stands, and the analysis is the analysis of a case that falls into that where the answer is yes to the first question. That is that it's a new context. And when we look at our case and ask whether this is a new context, we have a string of cases that are Fourth Amendment, conventional Fourth Amendment Bivens claims. This falls right into it. We don't see any meaningful difference between the line of Bivens cases with excessive force under the Fourth Amendment and this case. And so we think that Egbert does not foreclose our case. With regard to the other two questions, whether it's reasonable force and whether the law is clearly established. If I can go back to the Bivens, isn't a critical distinction here that this is on public land? You know, Bivens, for example, was in private apartment, D. A. Agents coming in. Um, this involves public lands, law enforcement, public lands, and obviously implicates a lot of substantial policy questions that Congress is better suited to decide than the courts. It does involve public lands, but but to the extent that it that it makes so meaningfully meaningful difference in the analysis, I don't see it. We have in most of these Fourth Amendment cases, people out in public. It may or may not be a private residence, but the Fourth Amendment applies equally. And and so we don't see that as a meaningful difference between the line of cases that we have, especially with the cost of this is a BLM agent Bureau of Land Management. So their officer's duty sound in a police officer, just, you know, maybe in a public park. This is Bureau of Land Management, and their duty is to watch over this huge, vast public land. It seems like their their duties are quite different from, say, just a regular police officer on a public street somewhere. Well, I think that it's true. It's that they're slightly different, but that's what they're essentially law enforcement officers are enforcing the laws on that area. So for example, the first statement by by Mr. Riggins, he when he saw my client and their friends, he believed that there were violations of law. Those driving an unregistered vehicle, crossing the double yellow line, driving UTVs on a public roadway. This is the same type of conduct. These are the same types of violations of the same types of laws that that that citizens face on a day on a daily basis. And so while you could, you could argue that there's some difference between the National Park Service when they're in Joshua Tree and the BLM land when they're down in the ravine. And when the ravine turns to a public street, and it's no longer BLM land, it's all the same type of conduct. It's that we have law enforcement officers enforcing the same, essentially, laws in what should be the same manner. And so we see it as a follow up. We also have here what was partially significant in Egbert. We've got a different defendant. We've got a totally different agency, Department of Interior, that that mattered in Egbert. Egbert was a typical Fourth Amendment excessive force claim. And here we not only have what Council for Miller brought up in terms of internal procedures, but we have the Federal Torts Claims Act, where Congress has specifically stepped in and created a question of extending Bivens. The question matters for sure. I see that the difference I see, Your Honors, is that in the focus of the court in Egbert, the court spent considerable time and energy spending discussing the national security element of law enforcement. And that's the distinction. It was clear that the court did not want to assert or recognize a Bivens claim where national security is one of those elements. And especially after we've had, you know, 9-11 and other acts, the court was, I think, careful to recognize a Bivens action, whether it's national security involved. And we don't have that in this case. We have public land search, certainly, but not national security on the border. And I think that was an important distinction. And I think that the court considered that heavily in rendering its decision in Egbert. Let me ask a follow-up question here. Does your client have a claim under the tort claim? Yes, my client has a claim under the tort claim, Judge. Well, have you filed an FTCA claim? That's still pending in district court, is that correct? That's correct. You have an FTCA case that's now pending in district court? Yes. What stage is it? Have you gotten past the pleadings? They were run together, so it's, we had a trial date and we were marching towards trial when the summary judgment motion was granted. And this is essentially stated until we hear from the public court. And with regards to the other questions, I think that our briefs address those questions adequately, unless the writers have any questions about confusion that may have led you to or questions that need to be answered. Our request is simply to affirm the district court's ruling. Could you address counsel's argument that the district court created issues of fact improperly from a declaration? Certainly. When you look at the record, my client was asked whether or not she saw here what she didn't see who was there at the time. Everything was moving fast and quickly. There weren't a lot of follow-up questions. Her deposition testimony and her declaration do not conflict in terms of one forecloses the other. And so what it does is it fills in some blanks. It certainly does that. It is supported, her declaration is supported by physical evidence, which makes clear the location of the shooter at the time that she was shot, where he was standing, and that type of thing. And so I think the court found several things. First of all, there's credible testimony about what happened. There's credible testimony about what led up to this. That is, at no time did my client or her husband engage in felony conduct. They were not driving 100 miles an hour. They didn't engage in conduct that was dangerous to anybody at any time. And so what the court found was conflicting facts that did not permit the court to rule in favor of the defendant on a summary judgment motion where we have facts that need to be determined by the trier effect. Okay, great. Thank you. And there are no further questions. Mr. Wagner, you have a few minutes if you want to use it. Oh, sure, sure. I'm prepared to address any questions the panel may have. But just quickly responding back, the location was not set in stone where the actual shooting took place, at least in terms of the plaintiff, because clearly she did not know where the officer was at the time she shot, at least in her deposition. And I note that when we did file the notice of appeal, there was an indication that we addressed the issue of jurisdiction, because obviously we all know that you cannot appeal a qualified immunity denial if there are contested issues of fact. And frankly, had there been any contested issues of fact, we wouldn't be before you, at least on that issue. As to whether Bivens applies, unless the court's got anything based upon what counsel provided, I'll stand on what we've submitted in terms of Bivens no longer being applicable, at least to this case involving Officer Miller. So unless the court has any additional questions. I don't think so. Great. All right. Thank you very much. Appreciate your time. Great. Thank you both for your helpful arguments. The case has been submitted, and we are adjourned for the day. This court for this session stands adjourned.
judges: TASHIMA, LEE, Freudenthal